The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, ladies and gentlemen, and also ladies and gentlemen on Zoom. We're pleased that you're here. We have two cases for oral argument, but before doing so, I want to officially submit two, I'm sorry, three cases. Alvarez-Montano v. Garland, Torres v. Garland, and Rodriguez v. Garland. Those three cases are now officially submitted. Now we will hear argument in the case of Serna v. Northrop Grumman. So please proceed. Yes, good morning, Your Honor. I would like to reserve five minutes for rebuttal. Keep your eye on the clock, but we'll try to help you. Okay, thank you. My name is Kelly Horwitz. I am here on behalf of Plaintiff and Appellant Annette Serna. This is a case with two separate and independent legal errors, which were committed by two different decision makers. One error was committed by the arbitrator, who manifestly disregarded the law of judicial estoppel. And in so doing, he found that even though Northrop had violated the Fair Employment and Housing Act in two separate respects, Ms. Serna was judicially estopped from prevailing because she had pursued claims in a Social Security disability hearing. The second independent judicial error occurred at the district court level, and that was when the district court granted the motion to compel arbitration. That was error because Ms. Serna never received the 2013 arbitration policy, which governed this dispute. Counsel, before we go much further, I want to talk about the arbitrator's decision. Yes, sir. As I'm sure you know as an experienced litigator, there's a big difference between manifest disregard for the law and just a mere error of law. Why is what the arbitrator did in this case a manifest disregard for the law under our case law? I'm glad that you asked that because I do think that's the crux of this case. As you know, the district court acknowledged that the arbitrator got the law of judicial estoppel wrong. But the district court concluded, well, that was just a mere misapplication or misunderstanding of the law. We, of course, disagree, and we disagree based on your own case law. And I think that there's never been a case that clearly set out the difference between a manifest disregard of the law and misapplication, and maybe this would be an opportunity to do it. But if you go back and cull the case law, there are certain considerations that come into play. Under Comedy Club, you need to show that the arbitrator recognized the law and ignored it. And then under Collins, that law needs to be well-defined, explicit, and clearly applicable. In this case, we checked all of those boxes, and so that's what makes this manifest disregard of the law rather than merely misapplication or misunderstanding of the law. In this case, it's clear that the arbitrator knew what the law of judicial estoppel was. It was presented to him on at least three or four occasions in a motion in limine, in respect to the motion for summary judgment, in post-trial briefs, and also in replies to those briefs. And this is not a case where the law of judicial estoppel is evolving or is murky. It's well-defined, it's explicit, and it's clearly applicable. For over a quarter of a century, we have case law both in California and in the federal courts showing that when a person pursues disability benefits, that is not clearly inconsistent with a claim under the Americans with Disabilities Act or the California Fair Employment and Housing Act. So in this case where you have the arbitrator knowing what the law is, having had it presented to him, he recognizes it and throws it in there in a string site but never actually uses it in his analysis, we would offer to you that this has now checked all of the boxes. There are five boxes, we've checked them, this is manifest disregard. This is not creating new law in this circuit. This is just taking all of the factors that this circuit has previously laid out and one by one going through them and saying, in this narrow set of circumstances, in this particular case, we have met all the criteria that the court has ever laid out before. Go ahead. I was going to ask about, so you have your argument about why the judicial estoppel decision by the arbitrator is manifest disregard. I'm not sure that I saw much as far as argument on the arbitrator's conclusion that CERN is not a qualified individual under FEHA. I don't know that, first of all, do you not, I assume you must not think that's a separate ground, right, because I don't remember that you addressed it really that way. But why is it not a separate ground? And I think your argument, the other question I've got about it is, I think your argument as to why the judge was wrong on that was because the But I don't remember seeing much case law that the judge is, I'm sorry, the arbitrator was disallowed from looking at the Social Security proceedings as at least some of the evidence to consider with regard to whether she was a qualified individual. So those are my two questions. Why can't you look at Social Security and why is the FEHA qualified individual decision not a separate decision that we need to consider? Okay. I would say, first of all, we do not claim that you cannot look at what took place in the Social Security disability hearing. In fact, I believe in the Jackson case, the court looked at what had transpired in, that may have been a workers' comp setting, but in either respect, in that case, for instance, what came out of that hearing was that the plaintiff had very clearly agreed that he needed certain accommodations that would never have allowed him to do the job that he wanted to do under the Fair Employment and Housing Act. So we don't say you can't look at that. We're just saying in this case, there's not a clear inconsistency, and the judge never, the arbitrator never identified a clear and total inconsistency that would have precluded her claim under the Fair Employment and Housing Act. With respect to your question about a qualified individual, we do see that as a question. Can I ask a follow-up question on that just so that before we? Sure. So, but it's whether or not somebody's a qualified individual or not is ultimately like a factual decision by the arbitrator. Do you agree with that, or do you think it's a? Yes. So, and we don't get to review, the federal courts don't get to review factual decisions, like factual. I mean, even, I don't even think that we get to, it could be blatantly wrong and we don't get to review them. Is that right? That is correct, but as I was about to say, in terms of why this is actually part of his disregard for. Okay, so maybe, yes, because at the end of the day, I think you have a real problem in your case if it is a separate ruling and, you know, and it's a factual decision that we don't get to review because we're, so I think your case kind of turns on the fact that it's not a separate ruling, which I think you're about to get to. First of all, do you agree that you kind of need it to be a separate, you need it to not be a separate ruling? Otherwise, if it is a separate ruling, do you have a way of prevailing? Well, I'm glad that you asked that because when you look at the arbitrator's mere pages before he goes into this analysis about qualified immunity and, I mean, qualified individual and presents it as a separate factual basis, if you go back to, and I have the site here, it's 3ER, pages 377 to 378. When the arbitrator is concluding that Northrop failed to accommodate Ms. is that the arbitrator concluded she could do her job with a reasonable accommodation. So he concludes she can do the job with a reasonable accommodation, which is what is being asked under the qualified individual analysis. Could she do the job with or without reasonable accommodation? The arbitrator has already made that factual determination. Now he switches gears and turns to the principle of judicial estoppel, and because he disregards the law, he concludes that, hey, the ALJ must have determined she couldn't do her job under any circumstances, and that's binding, and that precludes Ms. Cerna from actually being able to prevail on the claim that I, the arbitrator, have already found is a valid claim that she should prevail on, on a factual determination. So I think you're doing a good job of pointing out that, like, the factual basis for finding she's not a qualified individual may have flaws. The thing I'm struggling with is that if the qualified individual ground is a separate ground, it can be really flawed, the factual basis, and there's nothing we can do about it. That's the difficulty I'm having. Right, but he would never have done that analysis or concluded that she wasn't a qualified individual if he had not mistakenly or not mistakenly, if he had not ignored the law that already said. These two things are not inconsistent. The judges, the ALJ's determination that she could not work does not entail a finding that she could not do a job with or without a reasonable accommodation. So by adopting that finding or what he perceived to be that finding, because it wasn't even expressly stated by the ALJ, he's then overriding his own factual determination based on ignoring what the law actually says about what that ALJ's findings must mean. Well, to get back to what my colleague asked, as you well know, we get many cases where a judge, not an arbitrator, but a judge may be wrong on one part of a ruling, but a second part of the ruling basically cures the problem because either one would yield the result that the judge came to. That's what I think my colleague is struggling with, and I am too, is even if the arbitrator got this one part wrong, doesn't the other part, in effect, provide us another basis where we have to basically agree with, affirm what was done, because that does not constitute the very high standard of a manifest disregard of the law? What am I missing? I wouldn't be so bold as to say that Your Honor is missing anything, but I would point out that in the case law that has already determined how judicial estoppel applies in a Social Security disability setting, it is clear that when an ALJ determines that a person qualifies for disability benefits, that does not mean that she... You're going to judicial estoppel, and you're saying that it's a legal matter, and I think you're right. That it's a legal matter in our court. We've said that a finding of total disability or disability in our Social Security does not necessarily, as I recall, it's kind of what the cases say. It doesn't necessarily say they're unrelated, but it says one does not necessarily equate to finding that you couldn't work with accommodation. So I'll give you that. I understand that the difficulty, though, is if the judge is not using that for qualified or for judicial estoppel purposes, but is using that to find that she's not a qualified individual, and even if the judge is wrong in saying... It's hard to say it's completely irrelevant, right? If you've been found to be totally disabled, it'd be hard for us to say it's completely irrelevant, but I'm not even sure if I did think it was completely irrelevant what I could do with that because I don't think I'd get to review his factual findings. So that's the struggle that we're having, at least I'm having, is that this rule about how you can and can't use it for purposes of judicial estoppel doesn't decide the question if the qualified individual ground is a different ground, is a separate ground. That's the struggle. So pointing to the judicial estoppel doesn't help me. The rules about that. Well, I guess with respect, I think it can help because here you have... We're not asking you, in some respects, we're not asking you to review the arbitrator's independent factual findings because he already found she could do her job with a reasonable accommodation. That was the basis for him saying that Northrop would be liable for failure to accommodate her disability. So the only way that he could then undercut his own factual finding on the issue of whether or not she was a qualified individual is to misread or not properly apply, not take into consideration the prior law that says, what do you do with an ALJ's findings?  He's going back to the ALJ's findings and has to say to himself, well, I guess that this must mean she's not able to work with an accommodation, even though I've already found that she can. Do you want to save any of your time? You certainly don't need to, but do you want to save any of your time? I would like to save the last few seconds here. Very well. Okay. Thank you. Let's hear from counsel for Northrop. Good morning. May it please the court. Albert Lin on behalf of Appalachian Northrop Grumman. If I may, your honors, I'd like to pick up where Judge Smith and Judge Van Dyke left off, which is that on the merits, we think this court should refuse the request to vacate the arbitrator's decision. First of all, because there is this independent ground on which the arbitrator decided the two claims that are at issue here, and that's the qualified individual ground. And we heard my friend say today, what I think was clear in their briefs is that they're not challenging that factual finding because they can't, as Judge Van Dyke pointed out. Langstein, Collins, and a number of cases made clear that you can't go behind the record and challenge that factual finding of the qualified individual status. So really the question here is, is that a separate ruling? And we think it is. We think for a number of reasons it is. I think one, if you look at the arbitrator's decision, it is clearly separated out. At one point, the arbitrator says that he's deciding the question, whether Cerna is a qualified individual. And that's at page 514 of the excerpts of record. Just to clarify a little bit of confusion that may have resulted. I think my friend cited to page 377, she was citing to the interim, the earlier ruling. The final ruling is actually in the 500s of the excerpt of record, but it's largely the same for our purposes. So at 514, the arbitrator says is Cerna qualified individual. And then at 517, he separately rules on this question of judicial estoppel. And if you actually go into the discussion of qualified individual at, at 516, he specifically notes that Northrop has argued a theory of judicial estoppel that is quote discussed further below separately. And then I think even if you get through, dig into the analysis, you can see that the qualified individual analysis is not a judicial estoppel analysis. It's based on the facts and the evidence that were presented to the jury. And again, you can, the, the conclusion of that sentence is that the specific evidence presented in the Cerna hearing and the specific findings were that she cannot do her previous work. So, you know, I see, I'm looking at that right here on five, five, 16, which seems to which seems to cut against your colleague on the other side's argument that, that it was, that it was sort of just the legal, that, that the, the arbitrator here was sort of importing the, an erroneous legal conclusion from the judicial context and sort of improperly applying it here, because it does seem like the arbitrator at least says that he or she is relying on the specific evidence presented and the specific findings in the social security. But there is some tension between what the arbitrator concludes here. And then I think the portion that your colleague on our side was pointing to earlier, where the arbitrator did seem to say, well, I think this is, I think on page 508 and 509, well, I guess 510 technically, it says the totality of the evidence provides meritorious support for the contention that Cerna could have been accommodated by Northrop. So what, what do we do with, with that arguable inconsistency? Of course, Your Honor, a couple of things. I think the first is that that arguable inconsistency is at best an, an error of reasoning in the arbitrator's decision. I think that's beyond the scope of what's, what is a permissible basis for vacating an arbitrator's award under section 10 of the FAA. But, but I think the second answer to your question, Your Honor is the very next sentence as to what you're reading there, which is my friend has represented that the arbitrator has reached two conflicting findings here. But in fact, if you go on, he says the arbitrator in light of the conclusions reached in section E below, which is the section that we have been discussing this morning, arbitrator need not reach the question, whether Cerna sustained her burden of proof that she was able to perform her jobs, essential duties with or without reasonable accommodation. I think you can square those two things. Again, Your Honor, I don't think this court can or should be digging this deep into whether there's an inconsistency, but I think if you do, I think you can square those two sentences because in the earlier discussion here, the arbitrator makes very clear that he's not sure what the essential duties are. He says, that's the most hot. That was the most hotly disputed question here. He actually says at page five or six that he found Cerna's explanations of the inconsistency as to what the essential duties are was not persuasive. And so I think what he's saying here is I don't have to decide whether she's able to do the essential duties because as I find later, she's not a qualified individual because she's able to, and Judge, as you pointed out, she's not able to do. So, Counselor, you're reading this on 510, as Basie's saying. The arbitrator's saying, I'm not sure whether or not Northrop even attempted to accommodate her, but I'm not even reaching whether or not that accommodation would have been necessary or effective because I don't know whether or not she still could have done her job if she had been accommodated, which if she couldn't, then there would, in a sense, be no way to reasonably accommodate. I see what you're saying. Can I just ask you sort of like an overarching question? You know, in reading all of this, so you read the arbitrator's decision, and as I recall, the arbitrator basically, you get the impression, the arbitrator thought that Northrop didn't do things right here but sort of bound by the legal standard to rule in Northrop's favor. And then you get to the district court judge, and the district court judge doesn't really think the arbitrator did things right but is bound by the very deferential standard to rule in Northrop's favor. And I think that's kind of what you're arguing to us is that you don't need to get into the weeds of whether this is all right, but you need, you know, the very deferential standard, we rule in Northrop's favor. It just sort of feels a little like maybe she's losing, even though at every level people thought maybe she should win. Well, Your Honor, I have a couple of responses to that. When I say thought she should win, I thought she should win on the merits, not on the law. Understood. And I have a couple of responses to that. And the first is, Your Honor, one, obviously the FAA says what it says, and it's designed precisely to ensure that arbitration provisions, when there is one that has been agreed to, are given the due deference that they're due. I think to the sort of optical question that you're presenting, I think it's important to remember that the arbitrator found against Ms. Cerna and in favor of Northrop on the discrimination and retaliation claims, saying that she did not reach, satisfy her burden of proof. He furthermore says in this decision that on the reasonable accommodation, I don't think he says, Your Honor, as we were just discussing, I don't think he finds that Northrop necessarily failed to provide reasonable accommodations because he explains that he's not sure what the essential duties are here. So I don't think it's a really a fair characterization from our point of view that this is just a situation where we say, you know, don't look at the merits, don't look at the underlying here, because we're afraid of them. Again, I think it's the discrimination, the retaliation claims went our way with the arbitrator and judicial estoppel, Your Honor, has its own policy purposes, right? And there's a reason why that doctrine exists. And the reason why that doctrine was applied here. And I think there's a little bit of a, you know, a shade of Ms. Cerna's argument about how this determination is contrary to public policy. Your Honor, first of all, of course, the FAA doesn't provide a basis for vacating an arbitrator's decision on public policy basis. This court has never held as much, and it should not hold as much today, especially in light of hall street and the other Supreme court cases. But, but I think the second point I'm trying to make here is there are cases in California courts and in the ninth circuit that, that specifically grapple with the concept of judicial estoppel in the context of these discrimination claims, because there is an important public policy purpose there that is vindicated there as well. I want to be sure I understand your, what I think is a point. Are you saying that because the arbitrator was unable to determine exactly what the job was, what the duties were, that you're opposing counsel's comment that he was inconsistent is incorrect because it wasn't possible for him to have made a determination that it was okay for her to work and he didn't know what the job was. Is that correct? That is the explanation that I'm giving for what my friend has argued are inconsistent findings. And if that's right, then that very much undercuts her argument. Does it not? I think it does. I think it shows that there is no inconsistency in the arbitrator's decision. I think he very clearly in the reasonable accommodation section says that he's not reaching a conclusion on whether she could perform her essential duties because as he says, I later conclude in section E in the qualified individual analysis that she can't do any job, any job, whether her previous one or any other existing job. So it's sort of not relevant to the, you know, to have to reach that, that follow on question of what the essential duties were here, because based on the evidence that he looks at from the SSDI proceeding, and from here, he makes the finding that she can't do any job. And I think that is alone enough to refuse the, the, the appeal and the effort to vacate the arbitrator's decision. If I may, I'd like to touch briefly on the judicial estoppel point. Again, I, we don't think this court needs to reach that, but one thing I wanted to respond to, my friend has, has said a couple times, she's referring to the Cleveland versus policy management systems case and a couple other cases about this question, whether there is an inconsistency between an SSDI proceeding and an anti-discrimination claim under FIHA here or ADA or similar. And I wanted to stress judge Van Dyke's point, which is, I think my friend said at some point that the case law says those two proceedings positions are not clearly inconsistent. I think that is an, that is not a correct statement of law. I think as judge Van Dyke put it, it is correct, which is that, but those cases stand for is that they're not, those two proceedings are not inherently inconsistent, right? It's not always inconsistent, but they do say that there are situations where if you look at the specific evidence presented and the specific positions taken, you could find inconsistency. That is clearly what those cases say. And I think if you were to dig into the judicial estoppel analysis by the arbitrator, that's what he does here. He says, when I look at the specific positions here, this is one of those rare cases. And at the end of the day, my friend and Ms. Cerna don't disagree. If you look at the reply brief, they, they, uh, and the, um, the opening brief, they admit her opening brief to page 36, her reply brief to pages 15 and 16. They admit that there are quote rare cases, unique cases where there can be this inconsistency. And that's all that the arbitrator did here, which brings us back to the standard. Has there been a manifest disregard of the law? And there hasn't been, I think the arbitrator clearly understood what the law was attempted to apply it. We think the arbitrator got it right, but, and, and really what this boils down to is a disagreement about whether the arbitrator got it right. And that of course does not rise to the level of manifest disregard. Um, I have two minutes left and I do want to address, um, yeah, because, um, my friend may want to talk about this, this other question, the antecedent question of whether the order compelling arbitration was correct. I mean, that boils down to the following. Um, I think the district court was right. Then Miss Turner was bound to arbitrate under the 2013 policy or at the very least the 2010 policy. I think the way the analysis we'd urge this court goes is first of all, Miss Turner spends most of her effort arguing that she didn't get notice of the 2013 policy. She does concede that she has to show clear error with the district court's finding that she received that notice and we don't think she, she meets that standard. But importantly, your honors, I don't think you necessarily need to decide that because even if you assume that Miss Serna didn't receive inquiry notice of the 2013 policy, the district court committed clear error, then what's left is the 2010 policy and the 2010 policy continues to control for a couple reasons.  As to all future claims, unless somehow displaced, but if the 2013 policy doesn't control, then the 2010 policy does. And in fact, if you look at, um, this is at the excerpts of record, page eight 80, this is a 2013 policy. There's a, what I would loosely describe as a savings clause. And it says, to the extent that you and the company have previously entered into any agreement to arbitrate particular claims, such prior agreement will remain in effect, not withstanding this program. And then it goes on. And to the extent that this program, the 2013 policy is found to be inapplicable or council council in your last Thursday, what's your, what's the best case from California that says that somebody can agree to arbitrate future claims like here. Do you, is there a case on point for that or, um, your honor, I think we don't have a point to a specific one, but it hasn't been disputed here that she can, um, agree to arbitrate future claims. I see my time is about to expire if I may finish my answer. In the, in her reply brief, she talks a little bit about the shift cough case and the Lytton presumption about arbitrating future claims and the presumption of, of an arbitration clause surviving. So I think there's a, there's a concession there that absolutely you can agree to arbitrate future claims. But the question here is whether this provision continues to control. Is this like 1541 and civil code in terms of, uh, waivers as the future claims, is it has the same kind of policy implications in terms of whether future as yet unanticipated things could be, could be covered in an agreement of this nature? You know what I'm talking about with 1541? I don't, your honor. I'm sorry. It's a very common provision in contracts when you want to basically, uh, with a settlement, I'll be sure it covers everything and you cite section 1541 that says it covers now and future things. It cites a statute. And what I'm wondering is whether your policy, the 2010 policy and your argument that it covers future events as well is of the same type. If you don't know about the statute, then it wouldn't make any difference. But yes, your honor. And I want to make sure I don't step into something that I'm not super familiar with, but I will point out that, um, again, I think the cases, the, the, the ship cockpit, the Lytton presumption cases, there's the fifth circuit case brandom that we had cited in our survey, which this court refused to allow us to file. But the brandom case talks about how, um, an arbitration clause applies to claims arising after the expiration of an arbitration agreement. Only if the parties included post expiration disputes within the agreement. Okay. I think it's fairly well accepted that you can do that. And there has been no contention on the other side that you can. Okay. Very well. Any other questions? All right. So you have some time for rebuttal. We'll give you a little extra time because we've given him a little time. Let's give her two minutes, please. So please proceed. And if you will, uh, go ahead.   I would like to make a comment in response to the argument that the future coverage under the 2010 policy is, is viable and whether you contested that. Your honor. Um, I would say that was, uh, that issue is not one that needs to be reached because when Ms. Serna went on leave, and I think this case deals with some very unique and narrow circumstances that you're never going to see again, where she signed, she agreed to the 2010 policy. The policy said it needs to be reauthorized within three years. And lo and behold, Northrop reauthorizes that policy. The very day she leaves, she goes on leave. And the only way in which they disseminate it is through their internet. So if she had no notice of it, Northrop had the burden of showing that there was a viable, um, governing policy and that never produced any evidence that she got, that she got notice of that. So from your perspective, even if the 2010 policy that covered future events is viable as a matter of fact, does that the very day of the three year period somehow would vitiate that or does not the 2010 language about future events stand on its own and doesn't have a three year time limit to it? I think the difference here between, um, this case and other ones which consider expired contracts is that this is not a case where there was just a void left, that the policy expired and nothing else was in place. And you go back to the expired policy that has this future claim language. We're not communicating in this regard. My hypothetical, and we'll let you answer the question, my hypothetical is basically let's assume that there was no 2013 policy. Under the language of the 2010 policy, would not the language referring to future events still cover this? I would say it may, but I do think that the fact that there was a 2013 policy and the district court has noted that the 2010 policy allowed Northrop to reauthorize the policy, but that when there's a unilateral opportunity to modify a contract, it is constrained by good faith and fair dealing and that requires notice. Okay, but again, and I respect what you're saying, but my point is, and I think you agreed, it might. Even if there were no 2013, even if there were no notice issue, the reference to future in the 2010 policy, which your client clearly did have, knew of, and agreed to, would still cover this arbitration provision, at least arguably so. And I think you're saying it may, right? I would say only if there were not a new policy governing her employment claims. And why would – it seems to me you can't have it both ways. You're either saying, well, there was a new policy, but she didn't get notice of it, so she's not bound by it, but we can't follow the old one because there was a new policy. That doesn't make any sense to me. That's like down the rabbit hole, isn't it? Not at all. I think that if Northrop wants to reauthorize and change its policy and then require its employees to adhere to a new policy, it has – it is incumbent on Northrop to provide notice. And if she had been at work – So, counsel, I think I understand what your argument, I think, is that because there's a 2013, it wipes out the 2010, and she's not bound. So I understand that, but here's the thing I'm struggling with, is even if you're right that it in some sense wipes out the 2010, it wouldn't – I don't think you would be arguing that if something had happened between 2010 and 2013, and let's assume that she was bound by that and all the notice and all the stuff that you may be contesting, that if something had happened in 2011, that on day one of the 2013 policy going into effect and if she's not bound, that she wouldn't have to arbitrate about the thing that happened in 2011. I mean, it doesn't wipe it out in that sense. It doesn't go back and make it like the 2010 policy never existed at all. You're just saying it's not effective from 2013 going forward. I think that's got to be right. So what I don't understand is why, even assuming your argument is correct about the 2013 policy, why it wipes out – even if the 2010 is no longer in effect going forward, she has already agreed back in 2010 to 2013 that she would arbitrate future claims and that that would still seem to be a binding on her, even the same way it would be binding on her if she was trying to bring a claim for a 2011 incident, right? Because it may have – so that's the thing I'm struggling with is even if you're right about 2013 wiping out the 2010 and that she's not bound, those are two things I'm not sure about, but even assuming you're right about all that, how does that somehow wipe out that she had already agreed to arbitrate future claims? I think because there is a new policy in effect. For instance, if that – and perhaps it's a little bit clouded in this case because the two policies ended up being so similar. But assume that the 2013 policy came along and it said discrimination claims are no longer arbitrable. Yeah, but see – so, yeah, I could see that, but there you'd be saying that Northrop Grumman, because it too was a party to the arbitration agreement, had sort of waived the contractual agreement they already had that she would do. Then I think you'd have an argument. But if they're very similar, if all your argument is that now she's no longer bound by any current arbitration agreement from 2013 on, I'm just not seeing how that gets you to, but she's not bound by her former concession like it never existed. It doesn't wipe it out like she never made the agreement, I don't think. It might wipe it out that she's no longer – that she's not subject to any new provisions into 2013. But that's the struggle I'm having. I don't know if you have any answer to that problem other than what you already gave, which I don't. Right, right. I think that that's where I would draw the distinction, is that once Northrop Grumman has decided to issue a new policy, it's incumbent upon Northrop to let its – to make sure that its employees, including those who are on leave, know what is entailed in that. Judge Beatty had a question, and then we'll move on. Is there anything in the 2010 agreement that states that its provisions will not survive its termination or expiration? I am not aware of anything expressly in the policy, one way or the other, on that issue. I would say, though, that when Northrop turns around and reauthorizes it, well, I guess that would be the answer, is that it expressly says it has to be reauthorized within three years, which then implies at that point it expires if it hasn't been reauthorized. So your position is that when the policy states it applies to future claims, that means it only applies to future claims from 2010 until the point of reauthorization. So for 2010 to 2013, it's no longer a future claim under the 2010 policy if there's a reauthorization? I think in that case, if there hadn't been a reauthorization, then the cases that my opposing counsel has cited will come into play because then you would have a true expiration of a contract with a provision that specifically says future claims. And those are the kinds of cases that we see where that language comes into play. Very well. Other questions by my colleagues? Thank you, both counsel. Thank you. Your argument is very helpful. The case just argued is submitted.
judges: SMITH, BADE, VANDYKE